**SO ORDERED.**

**SIGNED this 5 day of March, 2026.**



_____
Joseph N. Callaway
United States Bankruptcy Judge

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### NEW BERN DIVISION

| | |
|---|---|
| **In the Matter of:** | **Chapter 11** |
| **JSMITH CIVIL, LLC,** | **Case No.: 23-02734-5-JNC** |
|     Debtor. | |
| | |
| **JSMITH CIVIL, LLC,** | |
|     Plaintiff, | |
| | **Adversary Proceeding** |
| v. | **Case No. 25-00163-5-JNC** |
| | |
| **CLANCY & THEYS CONSTRUCTION CO.,** | |
| **SEABOARD I, LLC, and** | |
| **PRESTON RIDGE HOLDINGS JV, LLC,** | |
|     Defendants. | |

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

THIS MATTER is before the court on the Motion to Dismiss (Dkt. 12) and Memorandum of Law in Support thereof (Dkt. 13) (collectively, the "Motion") filed by Clancy & Theys Construction Co. ("C&T"), Seaboard I, LLC ("Seaboard"), and Preston Ridge Holdings JV, LLC ("Preston Ridge") (collectively, "Defendants"). JSmith Civil, LLC ("Plaintiff" or "Debtor") filed a timely response (Dkt. 23, the "Response") opposing the relief sought in the Motion. A hearing thereon was noticed and held in this matter on February 12, 2026. Attorneys William Janvier on behalf of the Defendants and Joseph Frost on behalf of the Plaintiff appeared at the hearing.

**JURISDICTION**

This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334. For purposes of this analysis, the matter will be analyzed and treated as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E). The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984, by the United States District Court for the Eastern District of North Carolina.

**PROCEDURAL HISTORY AND BACKGROUND**

Debtor filed its chapter 11 case on September 19, 2023 (the "Petition Date"). Defendant C&T filed Proof of Claim No. 53 ("POC 53") in Debtor's chapter 11 case in the amount of $5,610,753.91, to which the Debtor filed an objection. (BK Dkt. 474, the "Claim Objection"). Debtor's chapter 11 plan of reorganization (BK Dkt. 426, Ex. 1, the "Plan") was approved by order (BK Dkt. 426, the "Confirmation Order") entered on September 19, 2024 (the "Confirmation Date"). The Confirmation Order required related adversary proceedings be filed within two (2) years of the Petition Date (Confirmation Order at 7, ¶ 5).

Debtor filed the complaint in this action on September 19, 2025, the final day of the filing period (Dkt. 1, the "Complaint"). The Complaint asserts seven claims for relief: (1) turnover pursuant to § 542 of the Bankruptcy Code (the "Turnover Claim"); (2) breach of contract pursuant to North Carolina law (the "Breach Claim"); (3 - 6) four claims in the alternative based on quantum meruit and unjust enrichment (collectively, the "QM Claims"); and (7) disallowance of claim pursuant to § 502(d) of the Bankruptcy Code (the "Disallowance Claim"). The Claim Objection has been consolidated with this adversary proceeding (Dkt. 15).

Plaintiff is a construction company which served as a subcontractor to Defendant C&T on four projects in North Carolina in 2021 and 2022. Defendants Seaboard and Preston Ridge

2

own three of the four project sites. The fourth project site owner is not a party to this adversary proceeding. All four contracts contain the same relevant term: Plaintiff was to be paid in regular installments, with 10% of each installment retained by the contractor (the "Retainage") until the subject project was completed and full compliance was confirmed. The Plaintiff left or was pulled from the projects prior to completion. The Turnover Claim alleges that despite the failure to complete, the Retainage for each job is recoverable as an account receivable. Importantly, the Complaint does not allege that a segregated bank account or other specific situs of the Retainage exists.

Defendants contend the Adversary Proceeding should be dismissed in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7012, for failure to state a claim upon which relief can be granted. Defendants further argue that the Disallowance Claim is untimely and time barred.

## DISCUSSION

### I. Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure, made applicable by Rule 7008 of the Federal Rules of Bankruptcy Procedure, provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to meet this threshold obligation, the action should be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that a complaint filed in a federal forum must include "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. 1955, 1974 (2007). As

elaborated in *Ashcroft v. Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." 129 S. Ct. 1937, 1949 (2009). Allegations in a federal complaint therefore must be more than a "formulaic recitation of the elements" of a claim. *Id.* at 1951. "A claim has facial plausibility when a plaintiff pleads facts sufficient to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted improperly or unlawfully." *Id.* "Because Rule 12(b)(6) specifies no other ground for granting a motion to dismiss, it follows that it can be granted *only if* the complaint on its face fails to state a plausible claim upon which relief can be granted." *Guzman v. Acuarius Night Club LLC*, No. 24-1555, 2026 WL 406093, at *3 (4th Cir. Feb. 13, 2026). "Determining whether a complaint states a plausible claim will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1940.

In reviewing a motion to dismiss, the court must accept as true all well-pleaded allegations of fact contained in a complaint. *E.I. du Pont de Nemours &Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Federal courts may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 388 n.7 (4th Cir. 2005).

**II. Turnover – Claim One**

The purpose of initiating a turnover action under section 542 of the Bankruptcy Code[1]

---

[1] The relevant provisions of 11 U.S.C. § 542 provide as follows:
(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in

4

is to recover indisputable property of the estate held by a third party at the time of and following the filing of the petition. 5 *Collier on Bankruptcy* ¶ 542.01 (16th ed. 2026). Generally, such actions are brought under 11 U.S.C. § 542(a) seeking the recovery of specific items, like obtaining a debtor's repossessed motor vehicle from a secured creditor. *Id.* at ¶ 542.03. A turnover action may also be initiated under § 542(b) to collect readily identifiable money held by an entity for a bankruptcy estate such as in an escrow bank account, funds held in trust, or factored accounts receivable. *Id.* at ¶ 542.04. The Turnover Claim here, however, is brought under § 542(a) (Complaint ¶¶ 50-51). Plaintiff seeks to extend that right to a construction contract retainage amount generally calculated rather than an amount net of chargeable completion costs after breach, or at least a disputable alleged breach. No existing and separate bank account with the four relevant project retainage funds is identified in the Complaint, nor does such an account exist according to counsel for both sides. The Complaint and Response instead frame their arguments around whether a general and contested account receivable allegedly owed by a party to a bankruptcy debtor is or is not subject to direct recovery under § 542(a) and (b) as "property of the estate."

To survive a motion to dismiss on a § 542(b) claim, a plaintiff must allege facts from which a court could find (1) a debt owed to the debtor as of the petition date, (2) that is indisputably property of the estate and (3) and that is "matured, payable on demand, or payable

---

possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

on order." *In re Se. Materials, Inc.*, 467 B.R. 337, 354 (Bankr. M.D.N.C. 2012).

Regarding the first point, the Complaint alleges multiple debts owed to the Debtor by the Defendants and provides details by way of various pre-petition dates when contracts were signed and pay applications were submitted. (Complaint ¶¶ 39-41, 55-68). The Motion does not address whether the alleged debts existed or were factually subject to a bona fide dispute on the Petition Date. The Complaint therefore plausibly alleges for motion to dismiss purposes that the Debtor has a claim for payment for prepetition work performed at the four identified projects as of the Petition Date.

Next, plaintiff must allege that the debt sought for turnover qualifies as "property of the estate." The Bankruptcy Code defines "property of the estate" broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Supreme Court has determined that this definition further includes "any property made available to the estate by other provisions of the Bankruptcy Code." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309 (1983). Courts have repeatedly ruled that accounts receivable fit within these broad definitions. *In re Biedermann Mfg. Indus.*, 453 B.R. 802, 807 (Bankr. E.D.N.C. 2011); *In re Nat'l Enters., Inc.*, 128 B.R. 956, 959 (E.D. Va. 1991) (collecting cases).

These arguments conflate the second and third elements. In the Motion, the Defendants argue that the alleged debt is not "property of the estate" because it is subject to reasonable dispute and therefore is not "mature" or not subject to reasonable dispute (Motion at 3). However, if a claim rises to a plausible assertion of "money owed" or an "account receivable," the claim itself constitutes property of the bankruptcy estate. Whether that claim is "mature" goes to the third element rather than a "not property of the estate" argument.

It is this third element that distinguishes turnover actions from non-Bankruptcy Code recovery of a debt or account receivable claims under applicable state law. "A cause of action is a turnover proceeding under § 542(b) of the Bankruptcy Code where it *seeks the collection rather than creation or liquidation* of a matured debt." *Shaia v. Taylor* (*In re Connelly*), 476 B.R. 223, 230 (Bankr. E.D. Va. 2012) (emphasis added). However, "the turnover power can be improperly invoked, especially when it is used as a Trojan Horse for bringing garden variety contract claims[.]" *Wayne Servs. Legacy v. Donlen Tr.* (*In re Toys "R" Us, Inc.*), 615 B.R. 96, 104 (Bankr. E.D. Va. 2020) (quoting *Geron v. Peebler* (*In re Pali Holdings, Inc.*), 488 B.R. 841, 851 n.39 (Bankr. S.D.N.Y. 2013)); *Barrett v. Up Ashburn, LLC*, (*In re McCarthy Contracting, LLC*), No. 25-30001-KLP, 2025 WL 3177168 at *2 (Bankr. E.D. Va. Nov. 13, 2025) ("Turnover is not appropriate 'to liquidate a disputed contractual or quasi-contractual claim.'").

To plausibly allege a mature debt, a claimant must provide a "method of accounting for the amount claimed" and information beyond their own records to support said accounting. *Up Ashburn*, 2025 WL 3177168 at *3 (declining to find a plausible allegation of a mature debt where claimant did not provide "information regarding the initial deposit, progress payments, or a method of accounting for the amount claimed."); *see Toys "R" Us,* 615 B.R. at 104 (although amount of debt was not quantified due to defendant's refusal to provide accounting, the complaint sufficiently explained how the amount would be calculated); *see also Smith v. McLeskey* (*In re Bay Vista of Va., Inc.*), 394 B.R. 820, 838-39 (Bankr. E.D. Va. 2008) (declining to find that a debt was matured for purposes of section 542 where debtor accounted for a specific amount but failed to provide supporting evidence of a present entitlement to that amount).

Defendants argue the alleged debts are not mature because they remain disputed. (Motion at 3). Plaintiff responds by arguing the Complaint alleges a mature debt and Defendant's dispute of that allegation is irrelevant. (Response at 14). When pleading a turnover action "it is not relevant that the defendant disputes the existence of the debt by, perhaps, denying the complaint's allegations, as long as those allegations state the existence of a mature debt." *Nat'l Enters.*, 128 B.R. at 959. While the Debtor is correct that it need only plausibly allege a mature debt, it nevertheless fails to do so. The Complaint provides an alleged amount of the accounts receivable for each project but does not provide any of the other information necessary to plausibly allege a mature debt. It contains no progress payment records or any other "method of accounting for the amount claimed." *Up Ashburn*, 2025 Bankr. LEXIS 2962 at *5-*6. Without an accounting, the Complaint has not plausibly alleged a mature debt. The claim therefore sounds in contract and alleged breach rather than section 542 turnover. The Motion is allowed as to the Turnover Claim.

### III. Breach of Contract - Claim Two

The contracts are by their terms subject to and governed by the laws of the State of North Carolina. A valid contract in North Carolina must have: (1) assent of the parties; (2) mutuality of obligation; and (3) definite terms. *Horton v. Humble Oil & Refining Co.*, 255 N.C. 675, 679 (1961); *Schlieper v. Johnson*, 195 N.C. App. 257, 265, 672 S.E.2d 548, 553 (2009). Under North Carolina law, there are two elements to a breach of contract claim: "(1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill,* 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000). "[F]or a breach of contract to be actionable[,] it must be a material breach[.]" *Long v. Long*, 160 N.C. App. 664, 668, 588 S.E.2d 1, 4 (2003) (citation omitted).

Here, the Plaintiff has attached written agreements between itself and the Defendants to the Complaint, containing signatures that demonstrate the assent of the Defendants (Complaint Exs. A-E). The written agreements also set forth the obligations of the parties and have definite terms. (*Id.*) Therefore, the Complaint plausibly alleges the existence of a valid contract, a point Defendants do not dispute. (Motion at 4).

A material breach is "one that substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Long*, 160 N.C. App. at 668. The Complaint alleges Defendants breached their contracts with Plaintiff by failing to pay sums due and owing under the contracts for construction services already rendered. (Complaint at 2). Failure to remit payment in excess of $2 million for services rendered would constitute a "substantial failure to perform." *Long,* 160 N.C. App. At 668.

Rather than dispute whether a material beach is alleged, Defendants contend the Complaint fails to allege that Plaintiff fully performed by completing the relevant projects. They imply this failure to perform was itself a material breach which would completely preclude Plaintiff from recovering for Defendants' breach, rather than acting as a defense for set off or other reduction in damages.[2] The Complaint need not allege that the project was completed to state a claim for breach of contract. Further, any breach by the Plaintiff would merely support a defense or an argument as to the merits but is irrelevant to dismissal under Rule 12(b)(6). The Complaint plausibly alleges that a valid contract existed and was materially breached by the Defendants. Therefore, the Motion is denied as to the Breach Claim.

---

[2] Defendants fail to cite any North Carolina law in support of their argument. While North Carolina law does contain certain defenses which could be relevant to their argument, such as the clean hands doctrine or anticipatory repudiation, a plaintiff need not rebut defenses in order to state a claim under Rule 12(b)(6).

**IV. Quantum Meruit and Unjust Enrichment – Claims Three, Four, Five, and Six**

The Complaint pleads quantum meruit or unjust enrichment in the alternative should the Breach Claim fail. To state a claim for unjust enrichment under Northa Carolina law, a party must plausibly allege: (1) it has conferred a benefit on the other party (2) it has not conferred said benefit officiously or gratuitously, and (3) said benefit is measurable. *See Booe v. Shadrick*, 322 N.C. 567, 570 (1988) (stating the elements of an unjust enrichment claim).

In the Complaint the Plaintiff alleges that it conferred a benefit to the Defendants in the form of construction services and building materials for which it was not paid. (Complaint ¶ 90), and that it conferred those benefits with the agreement of Defendants and an expectation of payment, not officiously or gratuitously. (Complaint ¶¶ 90-99). Finally, it plausibly alleges that the value of those benefits is measurable through the negotiated contract prices. (*Id.*).

In the Motion, similar to the Breach Claim, Defendants raise an argument with respect to the QM Claims that is more in the nature of an affirmative defense and therefore, while appropriate in an answer or motion for summary judgment, is not appropriate for consideration under a Rule 12(b)(6) motion to dismiss.

Specifically, Defendants argue that under North Carolina law, a suit for quantum meruit or unjust enrichment cannot be maintained where an express contract exists. (Motion at 4-5). However, the Complaint pleads quantum meruit in the alternative. (Complaint ¶1(D)). While the Complaint plausibly alleges that a valid contract exists, the court has not yet made, nor could it make such a finding at this early stage of the case. The issue of validity of contract and whether an affirmative finding then precludes the ability to make a quantum meruit claim is not appropriate for this stage of the litigation and the quantum meruit claims survive as an alternative to breach of contract.

**V. Timeliness of Disallowance Claim - Claim Seven**

Plaintiff's final claim in the Complaint is an objection to POC 53 filed by C&T in the underlying chapter 11 case and plan. Defendants contend this objection is untimely, asserting that the Plan set a bar date for filing objections to claims at "ninety (90) days after the Effective Date, or such later date the Bankruptcy Court may establish upon a motion by the Debtor[.]" (Plan, Art. II, Sec A, ¶ 15). The Effective Date of the Plan, according to one of the Debtor's Quarterly Reports (Dkt. 442), was November 1, 2024, some ten months before the filing of this adversary proceeding.

However, the Plan contradicts itself on this filing deadline. Article IV, paragraph O of the Plan provides that "All objections to claims, fee applications, and adversary proceedings will be filed with the Court within two (2) years of the Effective Date." This is in turn contradicted by the Confirmation Order, which sets a two-year deadline from the Petition Date rather than the Effective Date (Confirmation Order ¶ 5). When the plan and the confirmation order conflict, the order must prevail. *In re Forklift LP Corp.*, 363 B.R. 388, 396 (Bankr. D. Del. 2007); *In re Reisher*, 149 B.R. 372, 374 (Bankr. M.D. Pa. 1992); *Guardian S & L Ass'n v. Arbors Assocs. Ltd. Pshp.* (*In re Arbors Assocs. Ltd. Pshp.*), No. 97–2099, 1999 WL 17649, *4, 1999 U.S.App. LEXIS 162, *11 (6th Cir. Jan. 4, 1999); *see In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 367 (E.D.Pa.1996).

Therefore, at least for Rule 12(b)(6) purposes, the Confirmation Order prevails over the conflicting plan provisions and the proper deadline was two (2) years from the Petition Date, or September 19, 2025.[3] The Complaint was filed on September 19, 2025. The

---

[3] Where a time period is stated in years, the statute of limitations is calculated according to the "anniversary date rule." "Under this rule, when a statute of limitations is measured in years, the last day for instituting the action is the anniversary date of the relevant act. The anniversary date is the 'last day to file even when the intervening period includes the extra leap year day.'" *In re Gen. Creations, Inc.*, 343 B.R. 548, 552

11

Disallowance Claim therefore appears to have been timely filed, and the Motion is denied as a matter of law on this point. Of course, the argument may be renewed if other facts come to light in the context of summary judgment or affirmative defense at trial.

## CONCLUSION

For the foregoing reasons, the Motion is GRANTED with respect to the Turnover Claim and the Turnover Claim is hereby dismissed from this action. The Motion is DENIED as to all other claims. IT IS FURTHER ORDERED that Defendants shall have until April 1, 2026 to file an answer to the Complaint.

**END OF DOCUMENT**

---

(Bankr. W.D. Va. 2006) (citing *United States v. Hurst,* 322 F.3d 1256, 1260 (10th Cir.2003) (quoting *United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir.2000))).